**STATE of Missouri, Plaintiff–Respondent,**

v.

**·Lloyd HAMILTON, III, Defendant–Appellant.**

**No. 22562.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 4, 1999.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 22, 1999.

Irene Karns, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Krista D. Boston, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Lloyd Hamilton, III, (defendant) was convicted of possession of cocaine, a controlled substance, following trial before the circuit court without a jury. § 195.211, RSMo 1994. He contends that the trial court erred in denying his motion to suppress evidence and in proceeding to trial under circumstances whereby he had not waived a jury in open court and no waiver of a jury had been entered of record.

Defendant does not contend there was insufficient evidence from which the trial court could have found him guilty. Facts stated in this opinion are limited to issues defendant has raised in this appeal.

Defendant's second point is dispositive. It contends he did not waive his right to a jury trial; that the trial court committed reversible error by conducting his trial without a jury. This court agrees.

■ Defendant did not object to commencement of his trial without a jury present. He thereby failed to preserve the claim that the trial court erred by denying him a jury trial.[1] *State v. McMillan,* 593 S.W.2d 629, 632 (Mo.App.1980). Defendant obviously recognizes this failing in that Point II contends the trial court "plainly erred." Rule 30.20 permits matters not properly preserved to be reviewed on appeal if they are "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See State v. Bogard,* 836 S.W.2d 87, 88 (Mo. App.1992).

Rule 27.01(b) permits a defendant, with the assent of the trial court, to "waive a trial by jury and submit the trial of any criminal case to the court." It requires,

however, "In felony cases such waiver by the defendant shall be made in open court and entered of record."

The record on appeal does not reveal defendant's waiver of a jury trial in open court or any entry of record disclosing his waiver of a jury trial. In *State v. Rulo,* 976 S.W.2d 650 (Mo.App.1998), this court granted plain error review under similar facts. This court reversed the judgment of conviction in *Rulo* and ordered a new trial where the record was devoid of any reference that the defendant in that case had waived his right to jury trial. *Rulo* explains that to do otherwise "would be the equivalent of totally ignoring Rule 27.01(b)." *Id.* at 653.

■ Consistent with the holding in *Rulo,* this court concludes that Point II warrants plain error review; that the trial court committed error that resulted in manifest injustice. The judgment of conviction must be reversed and the case remanded for new trial.

■ Although it has no bearing on the outcome of this appeal, defendant's claim that the trial court erred in denying defendant's motion to suppress evidence will likely be an issue in any future trial. For that reason, it will be reviewed.

On January 4, 1996, police conducted a search of defendant's apartment. The search was conducted pursuant to a search warrant obtained by Springfield Police Detective Allen Neal. Detective Neal received information from a confidential informant that defendant possessed and was selling crack cocaine at his apartment. The informant stated that defendant "had the crack cocaine in [$]25 and $50 quantities"; that it was hidden in various locations in defendant's apartment and car. Detective Neal was told that defendant had been in trouble in the past for selling drugs; that defendant was in possession of a handgun.

---

1. Defendant did not file a motion for new trial. A motion for new trial is not required for appellate review of a case tried without a jury. Rule 29.11(e)(2)(A).

The informant added that the handgun "was possibly a BB gun."

Detective Neal checked city utility records and determined that the utilities at the apartment for which the search warrant was issued were in defendant's name. Detective Neal checked defendant's criminal history. His inquiry disclosed that defendant had been arrested 25 times. Defendant's arrest record included arrests for armed robbery, sodomy, burglary, stealing, drug offenses and concealed weapons charges.

Detective Neal requested that the police department's special response team execute the search warrant. He provided the team with all the information he had obtained, including defendant's criminal history and the possibility that defendant possessed a handgun.

The team decided prior to executing the search warrant that it would not knock on defendant's door before entering the apartment. The team approached the door, announced its presence and immediately used a ram to enter the apartment. Defendant was at the apartment. He was arrested and read his rights.

Defendant filed a motion to suppress the evidence obtained from the search of his apartment and to suppress statements he made to Detective Neal. An evidentiary hearing was conducted, after which the motion was denied.

Detective Neal testified at the suppression hearing. Detective Neal told the trial court, "He explained to me that he had what he referred to as buttons, which is a street term for the size of the rocks of crack cocaine. He said that he had various buttons of crack cocaine in the living room in a small zipper lock pouch." Defendant was questioned further. In response to Detective Neal's questions, he said there was additional cocaine in the apartment. Defendant directed Detective Neal to a locked box in a closet. The box contained three bags that each held approximately one ounce of crack cocaine.

Several small zipper bags of crack cocaine were recovered from the living room area of the apartment.

Detective Neal testified that he found approximately $980 currency on defendant's person; that defendant "stated it was from selling crack cocaine." Two other small Ziploc style bags that contained crack cocaine were retrieved from clothing hanging in a bedroom closet.

Items recovered from defendant's apartment were offered and admitted in evidence at trial over defendant's objection. Defendant objected to the evidence on the grounds asserted in his motion to suppress evidence; that the items were seized in violation of the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution and article I, sections 10, 15, 18(a) and 19 of the Missouri Constitution.

Defendant's Point I contends that the officers who executed the search warrant failed to knock and announce their presence. He argues that this action violated his right to be free of unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution and article I, section 15 of the Missouri Constitution. He claims the trial court erred in denying his motion to suppress evidence and in admitting the material to which the motion was directed in evidence.

■ Appellate review of a trial court's ruling on a motion to suppress evidence is limited to determining whether there was sufficient evidence to support the ruling. *State v. Ricketts*, 981 S.W.2d 657, 659 (Mo. App.1998). All facts and reasonable inferences are stated favorably to the order challenged on appeal. *State v. Rushing*, 935 S.W.2d 30, 32 (Mo. banc 1996), *cert. denied*, 520 U.S. 1220, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997). The trial court's judgment will be reversed only if it is clearly erroneous. *Ricketts, supra.* Although findings of fact are reviewed under a clearly erroneous standard, whether defen-

dant's constitutional rights were violated is a question of law reviewed *de novo*. *Id.*

The Fourth Amendment provides the same guarantees against unreasonable searches and seizures as article I, section 15 of the Missouri Constitution. *State v. Damask*, 936 S.W.2d 565, 570 (Mo. banc 1996). An analysis of search and seizure questions under the Fourth Amendment is identical to an analysis of those questions arising under Missouri law. *Id.*

The "knock and announce" aspect of the Fourth Amendment is discussed in *State v. Ricketts, supra.*

"Knock and announce" analysis has become a part of Fourth Amendment jurisprudence. In *Wilson v. Arkansas,* [514 U.S. 927], 115 S.Ct. [1914] at 1915 [, 131 L.Ed.2d 976 (1995)], Justice Thomas, writing for a unanimous Court, held that the common law knock and announce principle forms a part of the reasonableness inquiry under the Fourth Amendment. Even with a search warrant, the method of entry into a residence may render the subsequent search and seizure violative of the Fourth Amendment. *Id.* In some circumstances, an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment. *Id.* There is no rigid rule requiring announcement in every case, for that would ignore legitimate countervailing law enforcement interests. [115 S.Ct.] at 1918. Rather, unannounced entry may be justified when, for example, there is a threat of violence or where the police have reason to believe that evidence would likely be destroyed. *Id.* at 1919. The Supreme Court, thus "leave[s] to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. *Id.*"

981 S.W.2d at 660.

*Ricketts* explains:

In each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock and announce requirement. [*Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)] at 1421 [of 117 S.Ct.] "In order to justify a 'no knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would [allow] the destruction of evidence." *Id.* This standard, as opposed to a probable cause requirement, strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. *Id.* at 1421–22. "This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id.*

*Id.*

At the suppression hearing, Detective Neal testified that he received information from a reliable confidential informant that defendant was in possession of a gun, although it might be a BB gun. Detective Neal conducted an investigation that revealed defendant had an extensive criminal history, including a conviction for armed robbery. He learned that defendant was currently on parole. Detective Neal made the special response team that was planning to execute the search warrant aware of his findings. This information would support a reasonable suspicion that officers executing the search warrant could likely be subjected to physical danger; that defendant might forcefully resist an attempt to enter the premises that were to be searched. Additionally, the substance for which the search warrant was issued, crack cocaine, was of small bulk that could easily be discarded through bathroom or kitchen fixtures. There was

sufficient evidence for the trial court to find that the police were justified in failing to "knock and announce" their presence before entering defendant's residence to execute the search warrant. Point I has no merit.

The judgment of conviction is reversed for the reason that the record does not show a knowing waiver of jury trial by defendant. The case is remanded for new trial.

CROW, P.J., and SHRUM, J., concur.